UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DAN NYGREN,

               Plaintiff,

    v.

AT&T WIRELESS SERVICES, INC., et al.,

               Defendants.

CASE NO. C03-3928JLR

ORDER

## I.  INTRODUCTION

This matter comes before the court on Defendants' motion for summary judgment. (Dkt. # 30).  Although Defendants have requested oral argument, Plaintiff has not.  The court finds this matter appropriate for resolution without oral argument.  For the reasons stated below, the court GRANTS Defendants' motion in part and DENIES it in part.

## II.  BACKGROUND

Plaintiff Dan Nygren was an employee at Defendant AT&T Wireless Services, Inc. ("AWS") until his termination in January 2002.  For at least the last five months of his employment, Defendant Michael Brown was Plaintiff's supervisor.  After terminating Plaintiff, Defendant Brown hired a woman, Laurie Earls, to replace him.  Before terminating Plaintiff, Defendant Brown hired another woman.  After terminating Plaintiff, Defendant Brown laid off three men and one woman as part of a company-wide personnel reduction.

ORDER – 1

1    According to Plaintiff, Defendant Brown terminated him because he wanted to

2    open a job for Ms. Earls.  Plaintiff claims that Defendant Brown and Ms. Earls had

3    worked together for a previous employer, and that Defendant Brown wished to promote a

4    romantic relationship with Ms. Earls by hiring her.  Although Ms. Earls and Defendant

5    Brown have denied any relationship, Plaintiff insists that office gossip proves otherwise.

6    AWS contends that Defendant Brown terminated Plaintiff solely for his subpar job

7    performance.  They cite performance reviews from Defendant Brown and from other

8    supervisors.

9

10                                   **III.  ANALYSIS**

11   Plaintiff's complaint includes a claim for gender discrimination under the

12   Washington Law Against Discrimination ("WLAD") as well as claims for emotional

13   distress, negligent hiring, negligent supervision, negligent retention, and wrongful

14   termination in violation of public policy under Washington law.  Defendants move for

15   judgment on all causes of action as a matter of law.

16

17   In examining Defendants' motion, the court must draw all inferences from the

18   admissible evidence in the light most favorable to the non-moving party.  Addisu v. Fred

19   Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  Summary judgment is proper where

20   there is no genuine issue of material fact and the moving party is entitled to judgment as a

21   matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden to

22   demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477

23   U.S. 317, 323 (1986).  Once the moving party has met its burden, the opposing party

24   must show that there is a genuine issue of fact for trial.  Matsushita Elect. Indus. Co. v.

25   Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  The opposing party must present

26   significant and probative evidence to support its claim or defense.  Intel Corp. v. Hartford

27

28

ORDER – 2

Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).  Where a question presented is purely legal, summary judgment is appropriate without deference to the non-moving party.

## A.   Plaintiff Has Not Alleged Gender Discrimination.

Plaintiff's WLAD claims require evidence of gender discrimination.  In a typical case, the relevant inquiry is whether Plaintiff has produced sufficient evidence to meet the burden-shifting inquiry for employment discrimination cases established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See, e.g., Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998); see also Hill v. BCTI Income Fund-I, 23 P.3d 440, 446 (Wash. 2001) (noting that courts applying the WLAD follow guidance from cases decided under Title VII of the Civil Rights Act of 1964, including the McDonnell Douglas framework).  Here, the court is presented with a threshold question: Assuming all of Plaintiff's factual allegations to be true, does the conduct Plaintiff describes constitute gender discrimination?

To answer this question, the court must unravel Plaintiff's sometimes contradictory expressions of the theory of his case.  Plaintiff devotes much of his argument to a description of Defendant Brown's alleged relationship with Ms. Earls and its role in Defendant Brown's decision to terminate him.  Nonetheless, he asserts that "it is Brown's discrimination against men, not specifically the alleged relationship with Brown and Earls that is the basis of [his] claim of gender discrimination."[1]  Pltf.'s Opp'n at 18.  This allegation squares poorly with Plaintiff's testimony that he did not believe

---

[1]If, as Plaintiff argues, his case is not about the relationship between Defendant Brown and Ms. Earls, the large volume of briefing and evidence Plaintiff devotes to describing the alleged relationship is at best a misuse of resources, or at worst an improper effort to cast aspersions on others.

ORDER – 3

that Mr. Brown discriminated against him because he was a man.  Decl. of R. Howie, Ex. A (Nygren Dep. at 168:23-169:5).

Plaintiff's picture of Defendant Brown's alleged practice of "discrimination against men" is blurry at best.  Plaintiff does not explain why Defendant Brown hired other women at AWS.  Plaintiff does not suggest that Defendant Brown had any animus against men.  Plaintiff does not explain why Defendant Brown preferred women.  There is no direct evidence that Defendant Brown desired romantic or sexual relationships with other women he hired.  Plaintiff describes Defendant Brown's proclivities as a desire to "surround himself with women."  Pltf.'s Opp'n at 19.  Did he "surround himself with women" because he potentially desired a relationship with the women surrounding him, or for some other reason?  As the Seventh Circuit observed in Preston v. Wisc. Health Fund, 397 F.3d 539, 542 (7th Cir. 2005), instances of men discriminating against men in employment are relatively rare.  A plaintiff bears the obligation to give some "evidence beyond the bare fact that a woman got a job that a man wanted to get or keep" in order to create a triable issue over whether there was discrimination at all.  Id.  Plaintiff has not done so in this case.

Fortunately, the court need not decipher Plaintiff's murky theory of discrimination. Plaintiff's claim about why *he* was terminated is straightforward:  he was terminated because Defendant Brown wanted to replace him with Ms. Earls to promote their personal relationship.  Therefore, whatever form of discriminatory animus might have been at play in other employment decisions, the "discrimination" that allegedly led to Plaintiff's termination (and thus the only discrimination that matters here) was Defendant Brown's preference for Ms. Earls.

ORDER – 4

Plaintiff's gender discrimination claims fall squarely within the "paramour theory." The court uses this shorthand to describe claims of discrimination where a supervisor's preference for a paramour or potential paramour results in an adverse employment action against the plaintiff. Although the Ninth Circuit has yet to decide the question, other circuits have dismissed the paramour theory as a basis for a gender discrimination claim. E.g., DeCintio v. Westchester Cty. Med. Ctr., 807 F.2d 304, 308 (2d. Cir. 1987); Becerra v. Dalton, 94 F.3d 145, 149-50 (4th Cir. 1996); Womack v. Runyon, 147 F.3d 1298, 1300 (11th Cir. 1998); Preston, 397 F.3d at 541. District courts within the Ninth Circuit have taken the same approach. E.g., Keenan v. Allan, 889 F. Supp. 1320, 1375 (E.D. Wash. 1995); Alberto v. Bank of Amer., 1995 U.S. Dist. LEXIS 13520, at *11 (N.D. Cal. September 15, 1995); Candelore v. Clark Cty. Sanitation Dist., 752 F. Supp. 956, 960-61 (D. Nev. 1990).[2] These courts reason that a supervisor's preference for a paramour is not gender discrimination, because men and women alike "face[] exactly the same predicament" – they receive unfair treatment because they have no personal relationship with the supervisor. DeCintio, 807 F.2d at 308; Preston, 397 F.3d at 541 (adopting same reasoning).

The court adopts the reasoning of these courts and holds that a supervisor's preference for his paramour cannot support a claim for gender discrimination under the WLAD. Although the court is mindful of broad mandate and liberal construction of the WLAD (Hill, 23 P.3d at 445), Plaintiff cites no authority suggesting that Washington courts would reach a different result on this question than federal courts following Title VII. Plaintiff's only explanation for his termination is Defendant Brown's preference for

---

[2]In affirming the district court in Candelore, the Ninth Circuit did not reach the paramour theory. Candelore v. Clark Cty. Sanitation Dist., 975 F.2d 588, 591-592 (9th Cir. 1992) (Kleinfeld, J., concurring).

ORDER – 5

Ms. Earls because of their alleged relationship.  Accepting all facts in the light most favorable to the Plaintiff, the court finds that the facts do not constitute a claim of gender discrimination.  In so holding, the court does not signal its approval for the practice of preferring paramours in the workplace.  The court merely holds that such conduct, while certainly "unfair" (DeCintio, 807 F.2d at 308), is not actionable under the WLAD.

Before moving to Plaintiff's remaining causes of action, the court notes that there is a suggestion of a theory of gender discrimination in Plaintiff's motion.  Although Defendant Brown's desire to install Ms. Earls at AWS was not discriminatory, his decision to terminate Plaintiff instead of someone else at AWS *could* be discriminatory.  Plaintiff's own testimony, however, disposes of this theory.  When asked if he believed that Defendant Brown had treated him differently because he was a man, Plaintiff responded that he did not.  Decl. of R. Howie, Ex. A (Nygren Dep. at 168:23-169:5).

**B.     Defendant Brown's Alleged Actions Do Not Violate Washington Public Policy.**

Although an employer generally has the right to terminate an at-will employee like Plaintiff, Washington recognizes an action in tort for wrongful termination in violation of public policy.  Ellis v. City of Seattle, 13 P.3d 1065, 1070 (Wash. 2000).  To prevail on such a claim, a plaintiff must prove "the existence of a clear public policy" and must establish that "public-policy-linked conduct caused [his] dismissal."  Id.

Plaintiff's wrongful termination claim fails as a matter of law. The only public policy he points to is a "clearly articulated policy against sex discrimination in employment . . . ."  Pltf.'s Opp'n at 21.  Although the court does not doubt this statement of policy, the court has already noted that Defendant Brown did not engage in sex discrimination.

ORDER – 6

**C.     Plaintiff's Intentional Infliction of Emotional Distress Claim Fails, But His Negligent Infliction Claim Withstands Summary Judgment.**

Plaintiff claims that Defendant Brown is liable for intentional infliction of emotional distress.  This tort, often referred to as "outrage," requires Plaintiff to prove that Defendant Brown engaged in either intentional or reckless "extreme and outrageous conduct" and that the conduct caused Plaintiff "severe emotional distress."  Dicomes v. State of Washington, 782 P.2d 1002, 1012 (Wash. 1989).  "Extreme and outrageous" conduct is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Id. (citation omitted).  Before allowing an outrage claim to proceed, the court must decide whether reasonable minds could differ over whether the conduct was extreme and outrageous.  Id. at 1013.

Plaintiff has not provided any evidence, or even any allegation, of extreme and outrageous conduct.  Although Plaintiff claims that his termination has caused him extreme distress, the termination itself cannot support a claim of outrage as a matter of law.  Id.  Therefore, Plaintiff must point to extreme and outrageous conduct that occurred while Defendant Brown terminated him or at some other point.  There is no evidence of such conduct in the record.  It is clear that Plaintiff and Defendant Brown disagreed about Plaintiff's job performance, and that Plaintiff believed he was terminated unfairly.  There is no evidence that Defendant Brown's conduct in delivering Plaintiff's evaluations or terminating him was "extreme and outrageous."  The court finds that reasonable minds could not differ on this point, and thus grants summary judgment against Plaintiff's outrage claim.

Plaintiff need not demonstrate "extreme and outrageous conduct," however, to prevail on his claim for negligent infliction of emotional distress.  He need only establish

ORDER – 7

the general negligence elements of duty, breach, proximate cause, and damages.  Gain v. Carroll Mill Co., Inc., 787 P.2d 553, 555 (Wash. 1990).  He must also provide medical evidence of his emotional distress.  Hegel v. McMahon, 960 P.2d 424, 430-31 (Wash. 1998) (discussing "objective symptomology" requirement).

Defendants' sole challenge to the negligent infliction of emotional distress claim is that it is duplicative of Plaintiff's gender discrimination claim.  As previously noted, however, Plaintiff has no gender discrimination claim.  The conduct he complains of was not discriminatory.

Plaintiff has provided evidence that Defendant Brown's conduct caused him emotional distress.  Defendant does not challenge that evidence.  Summary judgment on this claim is not appropriate.

### D.    Plaintiff's Negligent Hiring, Supervision, and Retention Claims

An employer is liable for damage that an unfit employee causes if  "(1) the employer knew, or in the exercise of ordinary care, should have known that the employee was unfit; and (2) retaining the employee was a proximate cause of the damage to the plaintiff."  Carlsen v. Wackenhut Corp., 868 P.2d 882, 886 (Wash. Ct. App. 1994).  The same elements apply to claims of negligent hiring, negligent retention, and negligent supervision.  See, e.g., Haubry v. Snow, 31 P.3d 1186, 1193 (Wash. Ct. App. 2001).

There is no basis for granting summary judgment against these claims.  As with Plaintiff's negligent infliction of emotional distress claim, Defendants offer no argument against these negligence theories except the mistaken theory that they are duplicative of Plaintiff's discrimination claim.  Defendants have not addressed Plaintiff's evidence, much less established the absence of a genuine issue of material fact.

The court notes, however, that in order to prevail on these theories, Plaintiff must as a threshold matter establish that Defendant Brown caused him a legally cognizable

ORDER – 8

injury.  As noted above, the only claim on which Plaintiff can proceed against Defendant

Brown is his negligent infliction of emotional distress claim.  Thus, his claims of

negligent hiring, negligent supervision, and negligent retention will depend on proving his

emotional distress claim and proving that AWS knew or had reason to know in the course

of hiring, supervising, or retaining Defendant Brown that he posed a risk of causing

Plaintiff emotional distress.  The court finds little evidence to support these claims, but

Defendants' failure to challenge Plaintiff's evidence precludes summary judgment here.

### IV.  CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion in part and

DENIES it in part.  (Dkt. # 30).

Dated this 21st day of April, 2005.

JAMES L. ROBART
United States District Judge

ORDER – 9